PETER J. TUITE et al.

*v.*

MARY J. TUITE.

[Decided April 11th, 1907.]

1. Evidence *held* insufficient to justify a finding that defendant purchased certain real estate in her own name under an agreement to hold the same in trust for herself and complainants, her minor children.

2. Defendant, on the death of her husband, continued his junk business, with the assistance of three of her six minor children, the eldest of whom was a girl of sixteen and the youngest only a month old. She collected all the money, paid all the bills, and employed such help as was necessary, and from the profits purchased certain real estate in controversy.—*Held,* insufficient to establish a partnership between defendant and her children, under which they were entitled to an equal share in the profits, while defendant was alone responsible for losses.

3. The mother being entitled to the earnings of the children during minority, there was no consideration for such an agreement of partnership, if one was made.

4. Where, after the death of defendant's husband, she assumed control of his estate without any administration being declared thereon, she was chargeable with the value of the property derived from her husband, less all payments made by her with which a lawful administrator might have been credited, under the express provisions of *2 Gen. Stat. p. 1426 § 3.*

Heard on bill, answer, replication and proofs.

This is a bill filed by Delia, Peter, Ellen and Ann Tuite against Mary J. Tuite. Mary J. Tuite is the mother of the four complainants. The father was Michael J. Tuite. He died on the 9th of February, 1885, intestate, leaving at that time the widow aforesaid and six children, one of whom, Sarah, at the time of her father's death was fourteen years of age, died on the 22d of January, 1888, and another of whom, Michael, was born in January of 1885 and died in December of the same year.

The bill charges that at the time of the death of Michael J. Tuite he was engaged in the junk business in Jersey City, which

at that time was worth about $3,000; that no letters of administration were taken out, but Delia, the eldest child, and Peter, the next eldest, took charge of the business, and, with the assistance of Sarah until her death, conducted the same; that the business was profitable, and the income therefrom was invested in real estate in Hudson county, with the understanding and agreement that such real estate should be the joint property of the complainants and the widow, Mary J. Tuite, but that for the purpose of convenience the title to all of such property should be and was taken in the name of Mary J. Tuite, she to collect the rents and income, and, after paying the taxes and other expenses, to divide the balance among the complainants and herself in equal proportions.

It is charged that Mary J. Tuite agreed to hold the property in trust for the complainants and herself in equal shares, and it is prayed that she be decreed to be trustee, and that each of the complainants is entitled to a one-fifth part of the real estate and to a one-fifth part of all the rents, issues and profits thereof, less the expenses and disbursements in connection therewith.

The answer denies any agreement or arrangement concerning the said property, and denies that the defendant is a trustee for the complainants, and avers that all the property now standing in the name of Mary J. Tuite is her own, unqualifiedly, and that the complainants have no interest or estate whatsoever therein.

*Mr. James P. Northrop* and *Messrs. Tumulty & Cutley,* for the complainants.

*Messrs. Black & Drayton,* for the defendant.

GARRISON, V. C.

Michael J. Tuite married the defendant in the year 1868. He engaged in several businesses thereafter until 1877, in each of which he was unsuccessful, owing to his habits with respect to drinking. In 1877 he started in the junk business in a very modest way. He still continued to drink, and frequently became incapacitated therefrom, during which periods he transacted no business. His wife always was an active aid to him in his busi-

ness. They managed to lay by a little money, and in October of 1883 two lots of land, costing less than $400, were purchased in the name of the wife. This property was undoubtedly hers, and the charges in the bill concerning it utterly failed of proof.

Michael J. Tuite was ill for a considerable time before his death, and at the time of his death on the 9th of February, 1885, did not leave much property. He had no real estate. Whatever he had was the accumulated junk in the lower part of the house in which they lived, and the horses and wagons used in the junk business. There is considerable dispute between the witnesses for the respective parties as to the amount and value of this property, but it is obvious that it was not great. I am inclined to the opinion that $1,000 is an ample, but not accurate, estimate of the value of all the property that he left.

No administration was taken out upon his estate. At the time of his death the children were respectively aged as follows: Delia, sixteen; Sarah, fourteen; Peter, twelve; Ellen, eight; Ann, three years, and Michael, one month.

The junk business was continued, the widow taking out the license required by law in her own name. Men were hired to go out on the wagons, and were given money with which to buy junk, which was then brought to the house where the parties lived, was there sorted, if it required sorting—as the rags and other material of that character did—and was then sold to dealers in the different classes of material.

Delia, both before and after her father's death, engaged in sorting the rags. Sarah for a time sorted, but almost immediately after her father's death ceased doing this and engaged in work about the house. Peter went out on one of the wagons with the men and helped the best he could. The others were too young to do anything.

The girls were sent to school, some of them for short periods and others for considerable periods, and two of them at least were fairly well educated—that is, Ellen and Ann. All of the children lived at home with the mother, and she paid all of their expenses of maintenance and education. The business was under the direct management and control of the mother, and what

moneys she received therefrom she invested in the real estate described in the bill.

I do not find any evidence to support the charge of the bill that there was any agreement or understanding between the mother and the children that she was trustee for them with respect to the real estate purchased by her, in her own name, from the profits of the business. I think it would waste time to either analyze the evidence or cite authorities for what, to me, is so plain a situation.

I therefore conclude that the complainants are not entitled to relief on the case made by the bill.

The testimony of the complainants, while it did not refer to or concern in any way any agreement with the mother by which she was to act as trustee for them, did seek to show that there was a general partnership agreement between the mother and all six of the children, and that by the terms of the said partnership agreement the business was to be carried on and the profits were to be divided equally among all of the partners. They seek to show that this agreement was first entered into immediately after the father's death in 1885, at which time the eldest child was sixteen years old and the youngest one month.

The law with respect to the proof of partnerships *inter sese* will be found in *Hallenback* v. *Rogers, 57 N. J. Eq. (12 Dick.) 199 (Vice-Chancellor Grey, 1898)*; *affirmed, 58 N. J. Eq. (13 Dick.) 580*. But the facts in the case at bar do not, in my judgment, make it necessary to devote much time to the consideration of such principles. I utterly failed to find any credible evidence upon which any finding of a partnership could rest. It passes belief that a mother would enter into a partnership with her own children (the eldest of whom, a girl, was sixteen years and the youngest of whom was one month old), and would agree that each should have an equal share of the profits, while she, so far as they allege, was alone responsible for all the losses.

Furthermore, there was no possible consideration for such an agreement. The mother was entitled to the earnings of her children during their minority. *Campbell* v. *Campbell, 11 N. J. Eq. (3 Stock.) 268 (Chancellor Williamson, 1856)*; *Osborn* v. *Allen, 26 N. J. Law (2 Dutch.) 388 (Supreme Court, 1857)*;

*Furman* v. *Van Sise*, 56 N. Y. 435 (*1874*). And if they worked for her, under her direction and control, they but did their duty to her, and there is therefore no possibility of importing any consideration into any such agreement as they allege was made. Upon the theory, therefore, that there was a partnership between the complainants and the defendant I find that complainants could not succeed, even if they amended their bill by appropriate allegations to charge such an agreement.

It is proven that there was no administration taken out upon the estate of Michael J. Tuite, and that whatever personal property he possessed at the time of his death was taken possession of by his widow, the defendant. The children, of course, were entitled to two-thirds of the value of such property after the debts and administration expenses of the decedent were paid. Undoubtedly the defendant is accountable for the children's share of the property which she thus possessed herself of at that time. It may be that if she used the money derived from this property for their support, such expenses will be allowed to her. *Pyatt* v. *Pyatt*, 46 N. J. Eq. (*1 Dick.*) 285 (*Court of Errors and Appeals, 1889*).

Under our statute (*2 Gen. Stat. p. 1426 § 3, tit. "Executors and Administrators"*) she is chargeable with the value of all such property, less all payments made by her which a lawful administrator might have been credited with under the laws of this state.

She was not proceeded against in this case as an executrix *de son tort,* and no personal representative of the decedent is a party hereto, and the frame of the bill is not such as to raise the proper issues and secure appropriate relief from her as such. Since the estate is very small, and considerable expense has been incurred by the proceedings in this present suit, and much testimony has been taken which will be available in such an accounting, if one is to be had, I have determined to permit the complainants, if they so desire, to move to amend their bill so as to seek an accounting from this defendant for the property of Michael J. Tuite which came into her hands at the time of his death, making a representative of his estate a party, if they shall be so advised. As to this, see *1 Dan. Ch. Pr. & Pl. 319; Flagler*

v. *Blunt, 32 N. J. Eq. (5 Stew.) 521 (Chancellor Runyon, 1880); Jenkins* v. *Freyer, 4 Paige 47.*

If the complainants do not move to amend their bill within ten days after the date of the filing hereof, then I will advise a final decree dismissing this bill, with costs.